ORIGINAL

FILED
AUG 16 2005
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **BONDCOTE CORPORATION, a Virginia corporation, d/b/a BONDCOTE ROOFING SYSTEMS** | ) | |
| **Plaintiff,** | ) | 05-891C |
| **v.** | ) | **Case number** ______ |
| **UNITED STATES, on behalf of its executive agency UNITED STATES POSTAL SERVICE,** | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

Plaintiff, BondCote Corporation d/b/a BondCote Roofing Systems ("BondCote") files this action against Defendant, United States acting by and through its executive agency, the United States Postal Service ("USPS"). BondCote hereby appeals the final decision of the USPS contracting officer dated September 29, 2004, and requests that the Court declare that BondCote has no liability to the USPS as set forth below.

**Jurisdiction and the Parties**

1. This Complaint is before the Court pursuant to 28 U.S.C. § 1491 and the Court's jurisdiction to hear appeals from decisions of contracting officers under 41 U.S.C. § 609(a) (the Contracts Disputes Act ("CDA")).

2. BondCote is a Virginia corporation with its principal place of business in Pulaski, Virginia. BondCote manufactures and sells coated fabrics for commercial and military applications. Under one such commercial application, BondCote sells its coated fabrics to approved installers only, under the trade name *BondCote Roofing Systems,* for use as roofing materials.

{#0908403-1, 103651-00003-01}

3. USPS is an independent establishment of the executive branch of the United States government, created by 39 U.S.C. § 201. USPS is subject to the CDA pursuant to 41 U.S.C. §§ 601 and 602.

**Facts**

4. In or about 1992, BondCote manufactured and supplied to an approved installer a roofing system consisting of its coated fabric membrane and certain fastener systems for use on a Post Office building located in Harlingen, Texas. The Post Office building roof also was constructed with metal panels which BondCote did not manufacture, supply or warrant.

5. The BondCote roofing system, particularly the coated fabric membrane, used on the Harlingen, Texas Post Office building, was manufactured and supplied subject to a written "Premium Warranty," dated October 19, 1992. USPS accepted and agreed to the terms of the written Premium Warranty by signing the warranty. A copy of the written Premium Warranty is attached hereto and incorporated herein as **Exhibit A.**

6. The written Premium Warranty provides that BondCote will "repair leaks caused by the defects in the roofing system . . . for a period of 10 years from the date hereof," subject to certain limitations. One such limitation, set forth in Paragraph 3 of the Premium Warranty expressly excludes from the terms of the warranty "any loss resulting from . . . hailstorm. . . ."

7. The written Premium Warranty also provides, in paragraph 7, that "[t]he purpose of this Limited Warranty is to provide the Owner with repair or replacement to correct any leaks caused by defects in the manufacture or installation of roofing materials supplied by BondCote Roofing Systems. This is expressly agreed to be an exclusive remedy."

8. BondCote provided USPS, as the Owner, with the written Premium Warranty, and it intended, and the parties agreed, that it was an express limited warranty and was made in lieu of all other warranties, express, implied or statutory.

9. On or about September 18, 2001, BondCote received notification of leaks "all over the roof" of the Harlingen Post Office building from the Postmaster, Harlingen Main Post Office. A copy of the letter received by BondCote is attached as **Exhibit B.**

10. Both BondCote and USPS, by and through their agents, employees and/or contractors, inspected the Harlingen Post Office building roof to determine the source of the leaks.

11. USPS' investigation identified a number of potential sources of leaks. These included cracks in the membrane, cuts in the membrane, corroded metal panels and fasteners, disbonded membrane seams, disbonded rubber flashing in the internal gutters, and accumulation at roof drains of foam debris resulting from installation of the metal panel roof, and loose window gaskets. The cracks in the roofing membrane identified by USPS were conical and circular in nature, and were substantial and extensive.

12. With the exception of the relatively minor problem posed by the disbonded membrane seams, all of the items identified in the USPS investigation were items not covered by BondCote's written warranty.

13. USPS made demand of BondCote for repair or replacement of the Harlingen Post Office building roof based on leaks caused by the substantial and extensive cracking in the roofing membrane.

14. The substantial and extensive cracking in the roofing membrane was the main source of the leaks complained of by USPS, along with the other nonwarrantable items mentioned above.

15. Post Office employees confirmed to BondCote's investigator that the facility had gone through more than one hail storm, and that one storm in particular had hail stones "the size of baseballs." The National Climatic Data Center of the U.S. Department of Commerce reports that Harlingen, Texas experienced hail storms causing hail at least the size of 1.75 inches in diameter on or about March 9, 1994; February 1, 1998; April 26, 1999; and March 14, 2000. The Post Office membrane cracking demonstrated shielding effects and directional damage consistent with wind driven hail storms.

16. The substantial and extensive circular and conical cracking in the roofing membrane identified and complained of by USPS was caused by hail damage to the coated fabric membrane.

17. Consequently, BondCote denied the demand of USPS to repair or replace the Harlingen Post Office building roof free of charge as a warranty item. BondCote's denial was based on the grounds that hail damage is expressly excluded by the terms of the written warranty it provided to USPS, as Owner, and which USPS had accepted.

18. Additionally, BondCote had no liability to USPS under the terms of the written warranty because USPS failed to meet its obligation to reimburse BondCote in full for the services it provided in connection with its investigation of the non-warranty items.

19. On or about November 22, 2002, USPS notified BondCote that it had decided to replace the roof at a total cost of $264,950.00. USPS claims to have replaced the roof at some

point after November 22, 2002. BondCote is unaware of the exact date that work was begun or finished, and has been provided no evidence of the cost of that work.

20. By letter dated September 29, 2004, David W. Bright, a contracting officer for the USPS, issued a final decision at the request of USPS regarding BondCote's liability under the warranty pursuant to section 605(a) of the CDA. Mr. Bright's final decision held that BondCote had "breached its warranty . . . due to the premature failure of the roof due to manufacturing defects," and that BondCote was consequently responsible for the "cost of the replacement roof." The September 29, 2004 final decision states that "BondCote is liable under the CDA to the Postal Service, based on the terms of the warranty, for the replacement value of the roof in the amount of $264,950.00," plus simple interest at 6% from November 22, 2002. A copy of this final decision is attached as **Exhibit C.**

**COUNT ONE**

21. BondCote restates and realleges paragraphs 1 through 20 as though set forth in full herein.

22. The written Premium Warranty sets forth the only contractual obligations between BondCote and USPS in connection with the Harlingen Post Office building roof. The written Premium Warranty was accepted and agreed to by the USPS and is a valid and binding agreement between the parties.

23. The substantial and extensive damage to the Harlingen, Texas Post Office building roofing system which led to water leaks was caused by one or more hailstorms following the date of installation of the roofing system.

24. BondCote has no obligation to USPS under the plain terms of the written Premium Warranty for the leaking roof at issue because damage caused by hail is expressly excluded from coverage under the written warranty.

25. BondCote met each of its warranty obligations to USPS under the written Premium Warranty, and is not obligated to USPS for the cost of the new roof installed on the Harlingen Post Office building on or about November 2002.

26. In addition, BondCote asserts the following affirmative defenses to USPS' claims should evidence developed during discovery support them: (1) USPS failed to mitigate its damages; (2) USPS breached its obligations under the warranty relieving BondCote of performance thereunder; (3) USPS failed to provide BondCote with timely notice of the claimed defects.

**PRAYER FOR RELIEF**

WHEREFORE the Plaintiff, BondCote Corporation respectfully prays for the following relief:

A. That the Court hold a trial de novo of the issues raised by this Complaint, namely USPS' claims against BondCote under the terms of the written Premium Warranty dated October 19, 1992;

B. That the Court enter an Order vacating the September 29, 2004, final decision of the USPS contracting officer and declaring that BondCote has no liability to USPS under the terms of the written Premium Warranty dated October 19, 1992;

C. That, in the alternative, should the Court determine that the leaking roof is covered by the terms of the written Premium Warranty dated October 19, 1992, it enter an Order

fixing BondCote's liability in an amount that would approximate the cost of repairing the defective items to the extent covered by the written Premium Warranty;

D. That the Court award BondCote its attorneys' fees and costs incurred in this matter; and

E. That the Court award BondCote such other and further relief as may be just and proper.

Respectfully submitted,

BONDCOTE CORPORATION d/b/a
BONDCOTE ROOFING SYSTEMS

Date: August 15, 2005

By: Francis H. Casola
Of Counsel

Francis Hewitt Casola
(Virginia State Bar # 29108)
WOODS ROGERS PLC
Wachovia Tower, Suite 1400
10 South Jefferson Street
P.O. Box 14125
Roanoke, Virginia 24038-4125
540-983-7600 (phone)
540-983-7711 (fax)
*Counsel for BondCote Corporation d/b/a BondCote Roofing Systems*

# BONDCOTE ROOFING SYSTEMS

**P** 1191

## PREMIUM WARRANTY

Warranty Date: October 19, 1992 Membrane Installed 32,400 Sq. Ft.

BondCote Roofing Systems, a supplier of BondCote® roofing materials, EXPRESSLY WARRANTS THAT, SUBJECT TO THE LIMITATIONS BELOW, it will repair leaks caused by defects in the roofing system manufactured or supplied by it and installed by an authorized BondCote dealer/installer for a period of 10 years from the date hereof.

## LIMITATIONS

1. No liability shall arise under this Warranty until all bills for supplies, installation and services have been paid in full to the authorized BondCote dealer/installer and BondCote Roofing Systems and until signed by the owner.

2. Notification of leaks must be provided to BondCote Roofing Systems in writing to the address below within thirty (30) days after leaks are discovered or should have been discovered.

3. BondCote Roofing Systems shall not be liable for any loss resulting from natural disasters, including but not limited to, lightning, hurricanes, tornadoes, fire, hailstorm, and earthquakes; any acts of negligence, accidents, or misuse caused by parties other than the dealer/installer of BondCote Roofing Systems, including but not limited to, vandalism, civil disobedience, acts of war, or negligence of Owners; and alterations or modifications to the roof and/or intended use of the building not approved by BondCote Roofing Systems in writing; or any failure in the structure to which the roofing system is attached.

4. During the term of this Warranty, BondCote Roofing Systems, its agents, or employees, shall have free access to the roof during regular business hours. If BondCote Roofing Systems is unreasonably denied access by Owner then it may rescind this Limited Warranty immediately without notice.

5. THIS EXPRESS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, INCLUDING ANY WARRANTY WITH RESPECT TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER REMEDY, WHETHER ARISING UNDER CONTRACT, TORT, NEGLIGENCE, PRODUCT LIABILITY OR ANY OTHER ACTION AT LAW OR IN EQUITY. NO WARRANTY SHALL EXTEND BEYOND THE WARRANTY PERIOD. NO REPRESENTATIVE OF BONDCOTE ROOFING SYSTEMS HAS AUTHORITY TO MAKE ANY REPRESENTATIONS OR PROMISES EXCEPT AS STATED HEREIN. BONDCOTE ROOFING SYSTEMS SHALL, UNDER NO CIRCUMSTANCES, BE LIABLE FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES.

6. BondCote Roofing Systems shall have no obligation under this Warranty without the Owner's signature accepting this Warranty in lieu of all other remedies and the return of a signed copy of this Warranty.

7. The purpose of this Limited Warranty is to provide the Owner with repair or replacement to correct any leaks caused by defects in the manufacture or installation of roofing materials supplied by BondCote Roofing Systems. This is expressly agreed to be an exclusive remedy. Any inspection by BondCote Roofing Systems of the installation of its roofing systems shall not be construed to have created any additional duty, liability or warranty, on its part, express or implied, or any additional remedy for the Owner or any other party otherwise expressly excluded by paragraphs 5 and 7 hereof.

8. This Warranty is not assignable without written permission from BondCote Roofing Systems.

**ACCEPTED:**

[signature]

FSC/US Postal Service
P. O. Box 667180
Dallas, TX 75266

Owner's Signature & Address

U. S. Post Office & Main Office

New Combes Hwy & 1st
Harlingen, Tx 78550

Name & Address of Building Warranted (if different)

**BONDCOTE ROOFING SYSTEMS**

By: [signature]

Controller

Title

BondCote Roofing Systems
102 Industrial Drive
LaGrange, Georgia 30240

EXHIBIT A

POSTMASTER
HARLINGEN MAIN POST OFFICE

UNITED STATES
POSTAL SERVICE

TO: BONDCOTE ROOFING SYSTEMS
102 INDUSTRIAL DR
LA GRANGE GA 30240

SUBJ: WARRANT PREMIUM #1191

DATE: 18 SEP 2001

This is in rereference to Bondcote Systems warranty premium #1191. Warranty date is October 19, 1992.

As per this warranty, I am notifying you that there are roof leaks in this postal facility. These leaks are all over the roof and have now become a Safety issue.

Please call back upon receipt of this letter or respond in writing to our inquiry immediately.

Thank you.

MARY MARTINEZ
POSTMASTER

1502 NEW COMBES HWY
HARLINGEN TX 78550-9998
(956)423-1464
FAX: (956)423-1117

EXHIBIT
B

SOUTHWEST FACILITIES SERVICE OFFICE

UNITED STATES
POSTAL SERVICE

September 29, 2004

BondCote Roofing Systems
4090 Pepperell Way
Dublin, VA 24084

CERTIFIED MAIL 7000 0520 0022 2277 1667
RETURN RECEIPT REQUESTED

Re: Roof Warranty No. P 1191
Harlingen,Texas MPO

Dear Sir/Madam:

This final decision constitutes the government's claim pursuant to Section 605(a) of the Contract Disputes Act of 1978 ("CDA"). The claim is based on the following:

On October 19, 1992, your company gave the Postal Service a ten-year warranty on the roof of the Harlingen, Texas Main Post Office. The purpose of the warranty was to provide the Postal Service with repair or replacement of the roof due to any leaks which occurred due to manufacturing defects of the roofing membrane or materials used for installation of the roofing system. In the terms of your warranty, you stated that the roof installation had been personally inspected by a BondCote Technical Representative and found to be in full and strict compliance with the latest published detail drawings and specifications of BondCote Systems.

In late 2001-early 2002, the Postal Service had its consultant, Price Consulting, Inc. ("PCI"), review the roof. The report from PCI indicated that the roof membrane was experiencing premature failure, evidenced by the cracks and splits in the membrane and the disbanded lap seams. The parties traded letters throughout 2002, with your position being that the failure of the roof was due to hailstorms, which was excluded from the terms of the warranty. Since we were unable to reach an amicable settlement of the Postal Service's claim against you, and due to the continuing leaks in the roof, the Postal Service replaced the roof at the Harlingen, Texas MPO in late 2002. Further negotiations between the two parties regarding this matter have been unavailing.

As a result of BondCote's breach of its warranty, the Postal Service was forced to replace the roof at its own cost and expense. It is the position of the Postal Service that the cost of the replacement roof should have been borne by BondCote because the replacement was necessary due to the premature failure of the roof due to manufacturing defects. Therefore, BondCote is liable under the CDA to the Postal Service, based on the terms of the warranty, for the replacement value of the roof in the amount of $264,950.00. BondCote also owes simple interest at 6% from November 22, 2002 on this amount. Please remit payment of this claim to the undersigned.

EXHIBIT
tabbies
C

This is the final decision of the contracting officer pursuant to the Contract Disputes Act of 1978. You may appeal this decision to the Postal Service Board of Contract Appeals by mailing or otherwise furnishing written notice (preferably in triplicate) to the contracting officer within 90 days from the date you receive this decision. The notice should identify the contract by number, reference this decision, and indicate that an appeal is intended. Alternatively, you may bring an action directly in the United States Court of Federal Claims within 12 months from the date you receive this decision.

Sincerely,

David W. Bright
Contracting Officer

cc: Deborah W. Dobbins, Esq
Gilmer, Sadler, Ingram, Sutherland & Hutton
P. O. Box 878
Pulaski, VA 24301-0878

Sherman Sims
Architect/Engineer
Southwest FSO

Wayne Shinn
Facilities Engineer
Rio Grande District

Mark Dennett
Attorney
Memphis Field Law Office

P O BOX 667180
DALLAS TX 75266-7180
TELE: (214) 819-7201
FAX: (214) 819-7260